VESTAL *v.* VESTAL.

Opinion delivered February 3, 1919.

HOMESTEAD—ABANDONMENT.—Where, a year before marrying plaintiff, her husband entered into a partnership with another whereby five acres were set apart for business purposes from a homestead of 80 acres the contract providing for extensive improvements, etc., for a continuation of the business, there was an abandonment or segregation of such five acres from the homestead, thereby rendering them liable to his debts.

Appeal from Pulaski Chancery Court; *Jno. E. Martineau,* Chancellor; reversed.

STATEMENT OF FACTS.

Nora Vestal, the widow of Joseph W. Vestal, deceased, brought this suit in equity against Charles Vestal and the other children of said decedent for the purpose of recovering the possession of five acres of ground and and the greenhouses thereon which she claimed were a part of decedent's homestead. The material facts are as follows:

Nora Vestal is the widow, and Charles Vestal is a son by a former wife of Joseph W. Vestal, deceased. Joseph W. Vestal owned 130 acres of land which he originally purchased in 1880 and occupied as a homestead. From time to time he sold off a portion of his land until his homestead was reduced to 68½ acres. These 68½ acres are situated next to the corporate limits of the city of North Little Rock and that city is built around it on two sides thereof. Joseph W. Vestal built eight greenhouses on five acres of this land which was situated in a body about one block east of his dwelling house and conducted thereon the business of a florist. Charles Vestal, after he became of age, first worked for himself for three years and made $1,700. His father asked him to go into partnership with him in the florist business, which he agreed to do. In the summer of 1890 they entered into a contract of partnership in writing which is as follows:

"Little Rock, Arkansas, July 1, 1890.

"This is to certify that Joseph W. Vestal and Charles Vestal have this day formed a partnership to run and conduct the florist business on the place now owned by the said Joseph W. Vestal, on the following agreed terms, having invoiced and put in the eight greenhouses, hotbed, sash, flower pots and stock plants now on hand, as per appended invoice list, valued at $6,000, on which the said Charles Vestal has agreed to pay the annual interest of ten per cent. on the one-half par value annually while the partnership lasts, the said Charles Vestal being thereby entitled to equal profits by the sales of plants, etc., in conducting the business; the repairs of house and hotbed sash to be kept out of the proceeds of sales by firm, also hired labor needed to carry on the business, an agreed salary to be allowed above Charles W. Vestal for labor in conducting the business to be adjusted annually by accounts kept of the amount of time employed by both parties, the interest of the capital stock now paid up to be paid annually, or as hereafter agreed. Should it be found necessary to add additional houses, I, J. W. Vestal, agree to put them up and rent them to the firm at actual cost at ten per cent. per annum, repairs to be kept out of the proceeds of sales of the firm. Should it be deemed prudent to insure houses or stock against hail or fire, the cost of same to be borne by the firm, any additional stock needed at present or hereafter to be purchased and paid for by the firm, the present stock of florist goods and fixtures, show cases and counters now at city store to be purchased of J. W. Vestal by the firm and run in connection with the other business of the firm. Such lands as are needed for growing outdoor stock I, J. W. Vestal, agree to rent the firm at $10 per acre annual rent, the present outdoor stock of cut flower roses to be held and owned by J. W. Vestal, their present owner; and it is further agreed that they are to be cultivated and cared for by the firm, free of rent for the use of the cut flowers for sale by firm. Should it be the wish of either party to retire from the business, sufficient notice

to be given and time agreed upon for invoicing the stock on hands to be given. The flower pots and plants to be valued at two-thirds of their wholesale value, 15 per cent. to be deducted in counting flower pots for breakage, as was done in present invoice, pots to be put in at regular wholesale rates. I, J. W. Vestal, further agree to furnish the firm such number of pots as may be needed at regular wholesale rates, or the use of pottery I now own, for making the same at a fair agreed rental. Said Charles Vestal to hold his portion in fee simple, secured from my personal or other claims as security for his investment as long as his portion of the above annual interest is kept paid up; and the said J. W. Vestal further agrees to secure Charles Vestal by lien on his portion for any advances necessary to be made in conducting the business or otherwise. Each party to retain a copy of this original article of agreement, or any additions deemed necessary to be hereafter added thereto. Any articles not enumerated in the below list are understood to be the property of the said J. W. Vestal, to be sold for his benefit. If used in decorations, proceeds to be used by firm as payment for their care and room taken in housing them if sufficient; if not, to be charged a fair price for room taken until sold out. The following enumerated list embraces the articles and stock invoice in original transaction, to-wit: (Here follows a lengthy list of all the personal property put into the partnership. We do not deem it necessary to set this out in full.)

Copied and signed as per agreement, each hold an original copy of articles of agreement.

(Signed)                        Joseph W. Vestal.
                                Charles Vestal."

At the time the partnership contract was entered into the business was conducted upon the five acres of ground lying east of the dwelling house above referred to and there were eight greenhouses situated thereon. In August, 1891, Joseph W. Vestal married the plaintiff in this action and they continued to reside on the homestead until the death of Joseph W. Vestal which occurred on

the 6th day of August, 1917. The greenhouses were about one block east of the dwelling house and there are now twenty-one large greenhouses on this five-acre tract which is called lot 2.

According to the testimony of Charles Vestal, his father and himself remained in partnership until February, 1913. At this time the business was considered insolvent by them and Charles Vestal purchased the interest of his father. Joseph W. Vestal conveyed by deed the five-acre tract, on which the greenhouses were situated, to his son Charles Vestal on the 10th day of February, 1913, but his wife did not join in the execution of the deed. On the same day he made and filed for record a written declaration of what he considered his homestead and the five-acre tract in question was excepted from the description of the homestead. Creditors of the firm obtained judgment against them for the sum of $12,500. Charles Vestal paid off this judgment as well as other debts of the partnership amounting to several thousand dollars. Under his contract of purchase of his father's interest in the partnership business he agreed to pay his father $200 a month during his natural life. He carried out his agreement in this respect and paid his father the sum of $12,447.64.

According to the testimony of Nora Vestal she did not know that her husband had sold to Charles Vestal his interest in the partnership business and thought that her husband had remained a partner in the business until after his death. She did not know that he had made a declaration in writing or otherwise of what constituted his homestead and that he had excepted the five acres on which the greenhouses were situated therefrom. She always considered that the five-acre tract on which the greenhouses were situated was a part of their homestead and did not by any act of her own release her homestead right thereto and did not know that her husband had done so.

The chancellor was of the opinion that, under the act of March 18, 1887, with regard to the conveyance of

homesteads, the husband could not abandon any part of the homestead without removing his residence from the homestead and was, therefore, of the opinion that the plaintiff, Nora Vestal, was entitled to the possesion of the five acres of ground on which the greenhouses were situated as part of the homestead.

Other facts will be referred to in the opinion.

*Mehaffy, Reid, Donham & Mehaffy,* for appellant.

A husband may abandon his homestead or any part thereof. A sale is an abandonment although the wife does not join in the deed. He may abandon it without her consent. In this case there is a clear case of an abandonment of homestead in the tract claimed by appellee, Nora. 37 Ark. 298; 55 *Id.* 126; 73 *Id.* 266; 71 *Id.* 594; 48 *Id.* 539; 104 *Id.* 313; 68 *Id.* 76; 58 *Id.* 117; 116 *Id.* 103; 101 *Id.* 101; 103 *Id.* 574. Abandonment is a question of intention and the owner of a homestead may abandon a part of his homestead without moving off the entire tract. 58 S. W. 943; 17 *Id.* 110; 51 *Id.* 582; 53 *Id.* 828; 7 N. W. 176; 50 L. R. A. (N. S.) 1128. When J. W. died he had no homestead in the tract claimed by appellee Nora. The tract claimed was abandoned and made subject to sale without his wife's consent by his written declaration of homestead and by the sale of part of it. There is also error in the court's findings as to taxes, improvements, etc., paid and made by appellees.

*Murphy & McHaney,* for appellee.

The protection of the family from dependence and want is the object of the homestead law. 42 Ark. 541; 59 *Id.* 211. Desertion of the family or abandonment of the homestead does not forfeit the homestead right. Thompson on Homest. and Ex. § 279. There was no abandonment here. 70 Ark. 343; 74 *Id.* 88; 59 *Id.* 211; 81 Am. Dec. 301 and note; 81 *Id.* 301. Under the circumstances here the husband could not abandon nor sell without the consent of the wife. 81 Ark. 157. He could not destroy his wife's right of homestead by any declaration in writing or any sale of part or all unless his wife joined. 30 Am.

Cases, 1256; 4 Cal. 26. There was no segregation of the greenhouse tract by the business carried on. The wife never joined in any conveyance and any sale was void. Kirby's Digest, § 3901. Mrs. Vestal cannot be improved out of estate by betterments. 47 Ark. 457; 70 Id. 483. Nor can minors. The chancellor did not err in canceling the deed to Charles Vestal and vesting the whole tract in the widow and the decree should be affirmed. Cases *supra*.

HART, J., (after stating the facts). The record shows that the homestead of Joseph W. Vestal, deceased, was a rural one. Article 9, section 4 of the Constitution of 1874, provides in substance that the homestead outside any city, town or village owned and occupied as a residence shall consist of not exceeding 160 acres of land with the improvements thereon, to be selected by the owner, provided the same shall not exceed in value the sum of $2,500 and that in no event shall the homestead be reduced to less than 80 acres without regard to value.

The record shows that the homestead in question was less than eighty acres. The decree is sought to be upheld under section 3901 of Kirby's Digest which provides that no conveyance, mortgage or other instrument affecting the homestead of any married man shall be of any validity except for taxes, laborers' and mechanics' liens, and the purchase money, unless his wife joins in the execution of such instrument and acknowledges the same. This section of the Digest is section one of the Act of March 18, 1887, entitled An Act to render more effectual the constitutional exemption of homestead. In construing this section, this court has held that while the husband may not sell or encumber his homestead without his wife's consent, he may abandon it without her consent. The reason is, that as the head of the family he has the right to determine his domicile. *Farmers' Building & Loan Association* v. *Jones,* 68 Ark. 76; *Wilmoth* v. *Gossett,* 71 Ark. 594, and *Stewart* v. *Pritchard,* 101 Ark. 101. This is conceded by counsel for the plaintiff but the

record in this case shows that the husband never moved away from his residence on the homestead and they earnestly insist that the homestead cannot be abandoned unless the husband removes therefrom. We do not deem it necessary to decide this question in the present case because we are of the opinion that the husband abandoned the five acres of ground in question, on which are situated the greenhouses, before he ever married the plaintiff and that consequently the act of March 18, 1887, above referred to has no application whatever to the present case. Although our Constitution provides that the homestead shall be owned and occupied as a residence, the court has held that the owner of a town lot less than one-fourth of an acre in area may claim it as exempt where he resides upon the south part of it although he uses the remainder for a storehouse which is separated by a fence from the dwelling house. *Berry* v. *Meir,* 70 Ark. 129. There however, the storehouse was used by the debtor himself in his own individual business and was adapted to many kinds of business. There was nothing in the record to indicate that he intended to abandon that part of the homestead on which was situated the business house, and even the dissenting judge concurred in holding that the evidence did not show any intention on the part of the execution defendant to abandon that portion of the lot on which the storehouse was located as a part of the homestead. Here, however, the facts are essentially different. Prior to the time that Joseph W. Vestal entered into partnership with Charles Vestal, his son, he was himself engaged in conducting the business of a florist upon the five acres in controversy, had erected thereon eight greenhouses. The tract was situated about one block east of his dwelling house. The contract of partnership between father and son was entered into on the first day of July, 1890, a little more than one year prior to the father's marriage with the plaintiff. At that time, and for several years prior thereto, Joseph W. Vestal resided on his homestead with children by his first wife. The contract of partnership was in writing and while

Joseph W. Vestal did not convey any interest in the land to his son, he provided for the continuation of the business on the five acres in controversy and the greehouses, sashes, fixtures and plants were made a part of the partnership effects, and provision was made for their repair, etc. There is nothing in our Constitution or statutes which would prevent Joseph W. Vestal from abandoning a part of his homestead and devoting it to the partnership business and thus subjecting it to the payment of the partnership debts. The business of a florist requires houses peculiar to themselves. The greenhouses must necessarily be equipped with pipes, sashes and boxes for the flowers, etc. The equipment and fixtures are not fit or appropriate for any other kind of business. When the whole contract of partnership is considered together with the attendant circumstances, it is evident that Joseph W. Vestal intended to segregate the five acres from his homestead and to devote them to the partnership business. This he had a right to do. It was done a little more than a year before he married the plaintiff and the record does not show that he even contemplated marrying her at the time he formed the partnership with his son. Consequently it cannot be said that he intended to violate the rights of his wife.

In the case of *Wynne* v. *Hudson,* 66 Tex. 1, 17 S. W. 110, the Supreme Court of Texas held that the husband, without the consent and concurrence of the wife, might abandon a part of the homestead property as such, and devote it to a use inconsistent with the residence homestead rights, and that by so doing, the property would lose its character as a homestead, and its protection under the Constitution. In that case it was held that where a block appropriated as a homestead is larger than necessary for the uses and conveniences of a home, the husband, if he acts in good faith, may, without the wife's consent, appropriate a part of it for mercantile uses, although such appropriation withdraws from that part its homestead character. As above stated it is not necessary in the present case to accept the doctrine of this

case in its entirety, for at the time Joseph W. Vestal entered into partnership with his son, he had not married the plaintiff. We are of the opinion that the contract of partnership with the surrounding circumstances show an intention on the part of Joseph W. Vestal to abandon the use of the five acres on which the greenhouses were situated as a part of his homestead and evidenced an intention on his part to devote them to the uses of the partnership business. This he had a right to do and this is decisive of the case. To sum up, as we have already seen, this occurred a little more than a year before he married the plaintiff and the five acres of ground, on which the greenhouses were situated, had lost their character as a part of the homestead before he married the plaintiff, and there is nothing in the record to show that it ever afterwards became a part of the homestead.

It follows that the decree must be reversed and the cause will be remanded for further proceedings not inconsistent with this opinion.

HART, J., (on rehearing). This court has held that the owner of a homestead has the right and power under our present Constitution, when acting in good faith toward the family, to diminish the extent of the homestead by using a part thereof for other purposes. *Klenk* v. *Knoble and wife,* 37 Ark. 298; *Berry* v. *Meir,* 70 Ark. 129, and *Brown* v. *Brown,* 104 Ark. 313. In the first mentioned case the court said:

"It is to be observed that the Constitution does not limit the minimum extent of the lot. The resident may make his homestead as small as he pleases, provided it be not so contracted as to show an intent to evade the law, by making it too small for the actual use as a homestead. This is a matter to be determined by the chancellor, or a jury, on evidence. Provided he does retain a homestead fairly reasonable in extent, with his actual residence upon it, there is nothing in the policy of the Constitution to prevent the owner from utilizing other portions of his property as a basis of credit—al-

though he might, if so disposed, have held it all against execution. His design so to separate it, may be as fairly inferred from acts and circumstances, as was his original design to invest it with the homestead character.

There is no mode prescribed by which he must declare his intention before encumbering the part separated. Why should he be burdened with the expense of first taking it out of the same enclosure, or running a cross fence? If he has a right to do the thing, he has the right to manifest his intention in his own way. It is the doing of the thing, not the mode of doing it, which contravenes the law, if it be contravened at all.''

In the present case there is no contention that the owner of the homestead diminished it to an unreasonable extent. His homestead was next to the corporate limits of North Little Rock and comprised sixty-eight and one-half acres. Joesph Vestal took only five acres of this amount for the use of his business as a florist. The law of the case is well settled and the only question is its application to the facts as presented by the record. We did not hold that the partnership agreement alone was sufficient to show that Joseph Vestal intended to segregate the five-acre tract from his homestead and devote it to business purposes and thereby diminish his homestead to that extent, as counsel for the plaintiff seem to argue; but we held that the partnership agreement together with the circumstances preceding and following it had that effect.

It is true that there were only eight greehouses on the five-acre tract when the partnership between Joseph Vestal and Charles Vestal was formed; and that the business was then only one-fourth as large as at present. The plaintiff, however, admitted on cross-examination that the business had been conducted on the five-acre tract ever since her marriage. The testimony of Charles Vestal shows that the business was conducted on the five-acre tract from the time his father established it until the partnership was formed and that it was continued on the five-acre tract from that time until the present.

It is true the number of greenhouses was increased, but the whole of the five-acre tract has been used in conducting the business from the very beginning. As we pointed out in our original opinion the business of a florist is one peculiar to itself and requires houses of a particular construction. The greenhouses must have glass roofs and sides, a heating system and shelves and boxes for the plants, and ground for growing the plants. The greenhouses and their attachments constituted the chief assets of the business. The partnership agreement provided for an increase of the business and that Charles Vestal should hold his portion in fee simple. This all happened before the marriage of the plaintiff to Joseph Vestal, or even before they contemplated marriage, so far as the record discloses. The record shows that Joseph Vestal did not have sufficient capital to run his business and it is likely that he segregated the five acres from his homstead in order to make it liable for his debts and thus increase his business credit. So we are of the opinion that the acts and conduct of Joseph Vestal with regard to the five-acre tract show that he intended to segregate it from his homestead and to use it for conducting the business of a florist, and thereby make it liable to his creditors for his debts. This would decrease his homestead to that extent.

It follows that the motion for rehearing will be denied.