JORDAN *v.* JORDAN.

4-9145                                                              228 S. W. 2d 636

Opinion delivered April 3, 1950.

*Osborne W. Garvin,* for appellant.

*Price Shofner* and *June P. Wooten,* for appellee.

GEORGE ROSE SMITH, J. This appeal and cross appeal present separate controversies between the appellee as the widow of B. S. Jordan and the appellants, Jordan's two children by an earlier marriage. On the appeal the

question is whether the widow's homestead in Little Rock includes a commercial building on the rear part of the lot. The proof shows that before 1924 Jordan acquired the homestead now in dispute. The house itself occupies a corner lot and faces Tenth Street. In 1924 Jordan constructed a sheet-iron business building on the back part of the lot. This building fronts on the side street and is numbered 1009 Summit Street. Jordan operated a machine shop in the building for many years. In 1941 he discontinued his business, boarded up the door on the side facing his home, and thereafter rented the building as a garage and warehouse. The chancellor found that the entire lot constituted the homestead and that the appellee has been entitled to the rents from the business building since the younger appellant reached twenty-one. The appellants contend that by his conduct their father segregated the commercial structure from his homestead, so that the appellee is entitled only to a dower interest in the property.

In some of our earlier decisions we have recognized that one may reduce the area of his homestead by cutting off a portion and devoting it permanently to commercial uses. *Klenk* v. *Knoble,* 37 Ark. 298; *Vestal* v. *Vestal,* 137 Ark. 309, 209 S. W. 273. But on its facts the case at bar is controlled by our holding in *Berry* v. *Meir,* 70 Ark. 129, 66 S. W. 439. There Berry first bought the north third of a lot, on which there was a store. He later bought the south two thirds and built a residence upon it. A fence separated the store from the house. In that case, as in this one, the entire lot was less than the constitutional minimum of a quarter of an acre. Ark. Const., Art. 9, § 5. In sustaining Berry's homestead right in the entire lot we said: "Although this storehouse was used by the debtor himself in his own business, there are decisions by the courts of other states to the effect that such a storehouse, entirely separate from the residence of the owner, and not used as an appurtenance or convenience of the dwelling house, is not a part of the homestead. In re Allen, 78 Cal. 293, 120 Pac. 679. But a majority of the judges are of the opinion that this court is committed to a different view of the law. In *Gainus* v. *Cannon,* 42

Ark. 503, Mr. Justice EAKIN, speaking for the court, said: 'It is a strange and irrational idea sometimes advanced that a man ought to lose his homestead as soon as he attempts to make any part of it helpful in family expenses.' "

In the present case the facts favor the .homestead claim more strongly than did those in the *Berry* case. There Berry bought the store before he built the house, while here the lot had already been impressed with its homestead character when the warehouse was constructed. In the earlier case a fence divided the homestead into two parts; here such a separation is lacking. We accordingly hold that the entire lot was Jordan's homestead. As the widow's homestead right is a derivative one it also extends to the whole lot. *Stuckey* v. *Horn*, 132 Ark. 357, 200 S. W. 1025.

The cross appeal involves a promissory note for $900, payable to B. S. Jordan and the appellee. The facts are that when Jordan married the appellee he owned a vacant lot in Little Rock. After their marriage the couple contracted to sell the lot to H. W. White and his wife. This contract recites that the Whites have executed an installment note "to the sellers" for the unpaid balance of the purchase price. The note is made a part of the contract and is payable to "B. S. Jordan and Peggy C. Jordan, his wife." It is conceded that Jordan, with his wife's consent, appropriated to himself the down payment on the lot and the only installment that was paid on the note before his death. On these facts the chancellor held that the appellee could have acquired an interest in the note only as a gift from her husband, and the gift was incomplete for want of delivery of the note to the appellee. The decree vested title to the note in the appellants, subject to the widow's dower.

We view the transaction somewhat differently. We need not determine whether a promissory note payable to a husband and wife gives the wife an interest in the note in every case, even without delivery, for here something more than a mere gift is involved. The appellee had an inchoate dower interest in the vacant lot. She

signed the contract as a seller, binding herself to join in a deed when the note was paid in full. In these circumstances she was not a mere donee but rather was a party to the contract, which recited that the note was payable to her and her husband. Her rights in the note arose not from a gift but from her agreement to release her dower in return for being named as a payee in the note. In this respect the case is to be distinguished from *Neal v. Neal*, 194 Ark. 226, 106 S. W. 2d 595, relied upon by the appellants. There the intended donees had no contractual interest in the subject matter of the gift, and we held that the gift failed for want of delivery.

Since the note was payable to the appellee and her husband a tenancy by the entirety was created. Ever since *Union & Merc. Tr. Co. v. Hudson*, 147 Ark. 7, 227 S. W. 1, tenancies by the entirety in personal property have been upheld in this State. In jurisdictions where that is the law it is held that a chose in action payable to a husband and wife creates a tenancy by the entirety. *American Cent. Ins. Co. v. Whitlock*, 122 Fla. 363, 165 So. 380; *Smith v. Haire*, 133 Tenn. 343, 181 S. W. 161, Ann. Cas. 1916D, 529; *In re Greenwood's Estate*, 201 Mo. App. 39, 208 S. W. 635. In the absence of any language in this note to indicate that some other estate was intended we conclude that B. C. Jordan and the appellee took it as tenants by the entirety. Upon his death the title vested in her by survivorship.

Affirmed on direct appeal; reversed on cross appeal.