305 So.2d 71 (1974)
In re the ESTATE OF Vasco CARDINI, a/K/a Vasco A. Cardini, Deceased.
John E. CARDINI, Executor, Appellant,
v.
Janina CARDINI, Widow, Appellee.
Nos. 74-369 and 74-370.
District Court of Appeal of Florida, Third District.
November 19, 1974.
Rehearing Denied January 10, 1975.
*72 Robert J. Stampfl, Hialeah, for appellant.
Fleming & Neuman, Miami, and Stanley H. Apte, Miami Beach, for appellee.
Before HENDRY, HAVERFIELD and NATHAN, JJ.
HENDRY, Judge.
This case involves an appeal taken by each party from separate proceedings below. The two cases have been consolidated by order of this court for appellate consideration.
The appellant in case number 74-369 is John E. Cardini, the executor of his father's estate. Hereinafter, we shall refer to him as the executor.
In case number 74-370, the appeal is taken by Janina Cardini, the wife of the decedent [hereinafter the widow or Mrs. Cardini].
The widow has filed her appeal from a final judgment of the circuit court, general jurisdiction division, dated December 19, 1973. The executor appeals a final judgment entered by the same trial judge, however sitting in the probate division of circuit court. This latter judgment, dated February 11, 1974, assigned dower to Mrs. Cardini in her deceased husband's estate.
The deceased, Vasco Cardini, died on June 1, 1973, leaving a will naming John E. Cardini the executor of his estate. The will was duly admitted to probate and letters testamentary were issued to the executor.
Subsequently, on August 2, 1973, the widow, Mrs. Cardini, filed a complaint for declaratory judgment in the general jurisdiction division of circuit court, against the executor and the three other children of the deceased, his remaining heirs-at-law.
The complaint alleged, inter alia, that the deceased and one, Steven Klappas, had purchased certain real property at 6165 Pinetree Drive, on Miami Beach. Thereafter, the deceased purchased Klappas' interest for $11,000, and by warranty deed, Klappas conveyed his interest to the decedent only.
On May 30, 1973, two days before Vasco Cardini died, he and Mrs. Cardini executed a deposit receipt contract agreeing to sell the Miami Beach property to Arnold and Violet Rigel for $90,000. The complaint concluded that by virtue of this deposit receipt agreement and the facts and circumstances surrounding its execution, the decedent intended to create a tenancy by the entirety in the proceeds of the sale of the property and Mrs. Cardini was entitled to the entire proceeds as the surviving spouse.
The executor answered the complaint, denying that the decedent had manifested an intention to create a tenancy by the entirety in the proceeds. The legal position which the executor took throughout the proceeding seeking declaratory relief and up until the entry of final judgment assigning dower in the probate court action was that Mrs. Cardini was entitled to only her dower interest in the proceeds under an election to take dower filed in the probate court before the widow instituted her action for declaratory judgment.
From the testimony elicited at the hearing held in the declaratory relief action, the following facts also were shown: When the decedent died, he and Mrs. Cardini were living at the Miami Beach property as their marital residence. The evidence indicated that the widow had borrowed $1,000 from a friend,[1] which she *73 contributed towards the purchase of Klappas' interest.
Still, Klappas' interest was conveyed solely to the decedent, and there appears to be no dispute that when the deposit receipt contract was entered into, the decedent alone owned the property.
However, there is testimony in the record that the decedent did wish to purchase another house for himself and his wife and to insure that if he died, Mrs. Cardini would have a house in which to live. The record reflects further that the decedent and Mrs. Cardini made three written offers to purchase a house, through a real estate salesman, and to take title in both of their names.
The actual deposit receipt agreement, attached to the widow's complaint, reflects that Mrs. Cardini signed the contract twice and also initialed certain written portions. However, the contract reveals that the word "seller" appears throughout the document in the singular tense, and the fact that there may be more than one seller, besides the decedent, is indicated only by Mrs. Cardini's signatures and initials.[2]
The widow's contention before this court is the same argument she made before the trial court, which directed a verdict in favor of the executor and the other heirs at the conclusion of Mrs. Cardini's case.
She argues that under the doctrine of equitable conversion and the holding in Tingie v. Hornsby, Fla.App. 1959, 111 So.2d 274, the decedent's interest in the real property converted into personalty following the entry into the deposit receipt contract.
According to this line of reasoning, the benefits (proceeds) of the contract were intended to accrue to both Mr. and Mrs. Cardini jointly, and therefore an estate by the entirety was created as a matter of law.
The creation of an estate by the entirety in personalty is fundamentally a question of intent which must be proven. Bailey v. Smith, Fla. 1925, 89 Fla. 303, 103 So. 833; First National Bank of Leesburg v. Hector Supply Co., Fla. 1971, 254 So.2d 777.
In our opinion, this case is distinguishable both from Tingle v. Hornsby, supra, and from Jordan v. Jordan, 217 Ark. 30, 228 S.W.2d 636 (1950 Ark.), relied upon in the Tingle case and by the widow herein.
In the instant cause, we cannot conclude that Mrs. Cardini's signature on the contract along with her husband's can be translated into an intention to create a tenancy by the entirety in the proceeds. And, we do not think the widow's assertion that the decedent intended to apply the proceeds to a new house and to take title jointly with Mrs. Cardini is controlling.
The marriage between the decedent and Mrs. Cardini was the second time they were married to each other. They were married again on January 13, 1973, less than six months before the decedent died.[3] *74 The decedent held none of his other assets jointly with Mrs. Cardini, and the record reveals that in April, 1973 following a disagreement with his wife, the decedent filed an action to dissolve the marriage which he immediately discontinued.
Viewing the testimony in a light most favorable to the widow upon a directed verdict against her, we can conclude only that the testimony she offered before the trial court at best could reflect a desire by her husband to provide her with a home which would be hers when he died.
While this may manifest a future intention to purchase a home as tenants by the entireties, we do not think the evidence sufficiently demonstrates a present intention to receive the proceeds from the sale of the Miami Beach house as tenants by the entirety where the decedent alone held title to the real property.
Turning now to the executor's appeal from the order assigning a dower interest in the proceeds to Mrs. Cardini, it is obvious from the record on appeal that the executor advanced his contention that the widow relinquished her dower interest as a legal afterthought.
Throughout the declaratory judgment proceeding, the executor argued that Mrs. Cardini was entitled at most to a dower interest in the proceeds. The executor conceded that the doctrine of equitable conversion did apply and that therefore the widow's one-third interest in realty converted to a one-third interest in personalty after the deposit receipt contract was executed.
The executor's reason for propounding this argument was plain. He was attempting to defeat Mrs. Cardini's claim to the entire proceeds based on the contention that a tenancy by the entirety had been created.
The executor argued that Mrs. Cardini had signed the deposit receipt agreement solely to effectuate the sale of the Miami Beach property. It was urged that had Mrs. Cardini not signed the contract, thereby releasing her dower interest in realty, the attorney for the buyers, the Rigels, would not have permitted his clients to proceed with the purchase.
Thus, we quote the words of the executor's counsel, arguing to the court in the declaratory judgment proceeding:
"[By Mr. Stampfl] The consideration for the dower interest was merely changed from the one-third of the realty to a one-third absolutely in personalty." (Emphasis ours.)
It is the rule that a widow may only be deprived of her dower rights by voluntary consent, by her own act, or by statute. 11 Fla.Jur., Dower § 11. Acts or events may serve to bar dower as to particular property only, or as to all property. Ibid. Moreover, it has been held that a wife may be divested of her dower by a written instrument only if the express language therein or the irresistible implication of the terms of the instrument dictate that result. In re Estate of Hiley, Fla. App. 1972, 262 So.2d 476, 478-479.
In this case, the executor's own legal claim resulted in the trial court's conclusion that the widow retained her dower interest in personalty represented by the proceeds from the sale of the Miami Beach property. The executor maintained this position right through the probate court proceedings, until entry of final judgment assigning dower.
It was then that the executor took an about-face and by a "motion for rehearing to open final judgment" initially contended that Mrs. Cardini relinquished all her dower rights in the Miami Beach property which the decedent owned when he died on June 1, 1973.
And, we note from the record of the declaratory relief action that the trial judge stated to the widow's counsel as follows:
"THE COURT: The other side recognizes the dower and there is no problem *75 there. This was a separate lawsuit. This has nothing to do with the probate of the estate actually."
In conclusion, we think that the executor explicitly has recognized that the doctrine of equitable conversion is applicable in the cause sub judice and that Mrs. Cardini could elect dower in the personalty, viz. the interest created by the proceeds from the sale of the Miami Beach property.
Moreover, the widow's act of signing the deposit receipt contract along with her husband, in our opinion, did not serve to relinquish her dower interest in personalty in a "clear and unequivocal" manner. See, in re Estate of Hiley, supra.
We have carefully considered all other points raised in the briefs filed by the parties in both cases, together with the record and arguments of counsel, and have concluded that no reversible error has been shown in either case.
Therefore, for the reasons stated and upon the authorities cited and discussed, the judgments appealed are affirmed.
Affirmed.
NOTES
[1] This money was borrowed from a mutual friend of the deceased and Mrs. Cardini, one Edward Rajgrodski. At trial, Rajgrodski, who does not speak nor understand English well, testified that he loaned the money to "both" of the Cardinis. He stated that he expected to be paid back in six weeks, by July 1, 1973, and a memo of indebtedness, written in Polish and translated at trial, was introduced into evidence, signed only by Mrs. Cardini. The apparent purpose of this testimony was to demonstrate an equitable interest of Mrs. Cardini in the Miami Beach realty prior to the execution of the deposit receipt agreement. In our view, no special equity interest was proven.
[2] It is true that Mrs. Cardini's signature appeared twice under form language reading, "I, or we, agree to sell ..." and "I, or we, agree to pay ..." (a broker's commission). However, in our view, this language does not refute the fact that only the word "seller" generally appeared throughout the contract and that the proceeds were intended to be paid to only a single seller, Vasco Cardini, who held title in the Miami Beach property.
[3] Mr. and Mrs. Cardini were previously married on February 4, 1971 and divorced on July 24, 1972. It was between the time of the divorce and the second marriage that Klappas and the decedent purchased the Miami Beach property.