SOUTHEAST ARKANSAS LEVEE DISTRICT *v.* TURNER.

Opinion delivered January 18, 1932.

*Streett & Burnside,* for appellant.

*Golden & Golden* and *Poff & Smith,* for appellee.

SMITH, J. Appellees are landowners in the Southeast Arkansas Levee District, hereinafter referred to as the district, and they brought this suit to enjoin the collection of an alleged excessive assessment against their property.

The district was created by act 83 of the Acts of the General Assembly of 1917, which was amended in 1919, and further amended by act 139 of the Acts of 1923 (Special Acts 1923, page 261).

Section 8 of the original act of 1917 contained a legislative finding as to the extent of the betterments to be assessed against the property of the district, and, pursuant to the authority of this section of the act, the assessment against the lands was made on an acreage basis, whereas it was provided that real estate in said district, "within the limits of any town" in the district, should be taxed on the basis of the assessed value thereof "as the same appears assessed for State and county taxes."

This § 8, which had been amended by the act of 1919, was further amended by § 1 of act 139 of the Acts of 1923, *supra,* and, as thus amended, the portions thereof relevant to this case read as follows:

"It is hereby ascertained and declared that all real estate subject to overflow in said district (except the real estate included in the limits of any town or city in said district) is benefited annually to the extent of thirty cents (30c) per acre; and there is hereby levied and assessed against each and every acre of such real estate in the district, outside the limits of any town or city and subject to overflow, a tax of thirty cents (30c) per year.

"That each and all of the parcels of real estate subject to overflow included in the limits of any town or city in said levee district is benefited annually not less than thirty (30) mills on the dollar of the assessed value thereof, as the same is assessed for State and county taxes; and there is hereby levied and assessed against each and all of such parcels of real estate in said district within the limits of any city or town, annually, a tax of thirty (30) mills on the dollar of the assessed value thereof, as the same appears assessed for State and county taxes."

The question involved in this case is the one of fact, whether the lands of appellees are "real estate included in the limits of any town or city in said district." Upon this issue of fact, testimony was heard by the court, and this testimony was summarized by the court in a finding of fact made a part of the decree, which we accept as correct, and such facts as we find necessary to state are taken from this finding or from the stipulations of fact filed in the case.

The court found that the property in question was situated in Friedman & Willoughby Additions Nos. 1, 2, 3 and 4 to the city of McGehee, but that no part of any of these additions were within the corporate limits of the city, and that the city of McGehee as a municipality exercises no control over these additions in the way of taxation or otherwise, and that the owners of these additions who reside therein have no vote in the government of the city of McGehee.

Additions 1, 2 and 4 are platted into five-acre tracts which were designated as lots, the plat of the survey

thereof being duly recorded, and addition 3 is platted into lots and blocks of five acres to the lot, and the survey and plat of this addition was also duly recorded. The lots in all these additions are contiguous, and, "but for a bayou and a road which traverses the property and streets as shown on the plats and maps, the four several platted additions comprise one solid body of land," bounded by the outer lines of the several additions.

The plats of the additions 1 and 2 were filed for record in March, 1921; that of addition 3 on November 11, 1924, and of addition 4 on October 6, 1927, and the respective additions, after the plats thereof had been filed for record, were assessed for general taxes as town lots and as additions to the city of McGehee.

It appears from a map of the city of McGehee and the plats of the additions thereto and the stipulations of counsel concerning them that all the territory in said four additions is bounded by the outer lines of said additions, and that the northwest corner of the tract of land thus divided into additions is directly south of the southeast corner of the city of McGehee and separated therefrom only by the right-of-way of the Missouri Pacific Railroad. The map further shows that the Arkansas & Louisiana highway, which is the main artery of travel and commerce into and through the city, is a concrete pavement 14 feet wide and is a continuation south and east of the main street of the city and passes between additions 1 and 2, and the lots of said two additions front thereon. A branch of this pavement running south to Dermott forms the street upon which certain lots of the 2nd addition and the western part of all the lots in the 4th addition front, thus connecting up and giving easy access to all parts of the city of McGehee to the residents within said four additions.

Addition 1 is divided into 16 lots and contains 19 residences, a public garage and one store building; the 2nd addition contains 13 lots, upon which there are 16 residences. There are 6 residences in the 3rd addition,

and only 1 in the 4th addition, but that addition contains only 4 lots.

There appears therefore to be 42 residences with the usual improvements on the four additions. Some of these residents have truck patches, orchards, gardens, or chicken farms, and most of these residents are engaged in pursuits related to and carried on in the city of McGehee. The residences are of a permanent and substantial character, and the occupants thereof are furnished with gas, water, electricity and telephone service from the city of McGehee.

The court found the fact to be that none of these additions had been platted when the original act of 1917 was passed, and that additions 3 and 4 were platted subsequent to the passage of the act of 1923. We regard these facts as unimportant, for the reason that all the assessments here in question were made subsequent to the passage of the act of 1923. This act was, of course, prospective in its nature, and was intended to govern all assessments thereafter made, and to apply to the conditions then existing. Section 24, chapter "Statutes," 25 R. C. L., page 778; *Nations* v. *State*, 64 Ark. 469.

The question for decision is therefore whether the lots in the four additions are real estate included in the limits of any town in said district within the meaning of the act of 1923. The chancellor found in an able opinion that they were not, and that "in the instant case the Legislature had used the word 'town' in its popular sense, and that it was the legislative intention to recognize that towns, as ordinarily understood, had limits within which it exercised local government," and that the Legislature intended to embrace for assessment purposes as town property only such real estate as was actually situated within the corporate limits of a town.

We concur in the view that the word "town" was employed in all the acts relating to the district in its popular sense. At the time of their enactment we had a statute defining the terms "town or city" as employed in our taxation statute. The General Assembly of 1883 passed

a comprehensive act "to revise and amend the revenue laws of Arkansas" (Acts 1883, page 199), and § 75 thereof defined the terms "town or city" as follows: "For the purposes of this chapter the terms town or city, and towns and cities, shall apply to all cities, or towns, incorporated or not incorporated; also, to all blocks or lots, or parts thereof, assessed for taxation as such, whether the same is situated in an incorporated city or town or not."

This section appears as § 9939, Crawford & Moses' Digest. This act of 1883 relates, of course, to the revenue laws of the State, and not to improvement district legislation, but it contains a legislative recognition of the fact that there were towns (as there still are) in the State not incorporated, and that the fact of incorporation was not the test as to whether a community was in fact a town.

We must assume that the General Assembly was familiar with this definition in the enactment of the legislation pursuant to which the district has assessed betterments against the property lying within the district, and none of these acts make any distinction between incorporated and unincorporated towns, but contain the direction that real estate be assessed as urban if it is within a town.

We are cited to numerous cases from various jurisdictions in which the word "town" has been defined, but we do not review them, as we think the word has been sufficiently defined in our own cases.

One of the latest is the case of *State* v. *Haynes,* 175 Ark. 645, 300 S. W. 380, which construed an act placing motor vehicles under the control of the Arkansas Railway Commission when operating between cities and towns. It became necessary to define the word "town," and this was done by adopting a definition from 38 Cyc. 596, and we there said: "Hence it may be said that the word 'town,' as used in the statute, is to be considered in its popular sense as an aggregation of houses so near one another that the inhabitants may fairly be said to dwell together." In a note to the text quoted from Cyc.,

*supra,* our own case of *Murray* v. *Menefee,* 20 Ark. 561, was cited as authority for the definition given.

This Arkansas case construed a statute relating to the granting of a ferry license, which provided that not more than one ferry permit should be granted except at or near cities or towns, and the court said: "In this country there seems to be no precise legal definition of the term 'town,' and we suppose it was used in the statute in its popular sense."

It is true the court held that the place there claimed to be a town was not a town, but that holding was made upon the facts there stated as follows: "In the case before us, the proof is substantially the following: The place claimed to be a town is designated 'Cadron,' situate on the Arkansas River, below the mouth of Cadron Creek; the courts for Conway County were held there from 1826 to 1828, but never afterwards; in the language of the witness, it was 'abandoned' in 1831, and continued 'abandoned' until 1845 or '6. In 1855—when the ferry was established—there was at 'Cadron' one store, which did business to the amount of about $4,000 per annum; dwelling houses for two families, and outhouses; the population consisted of two families, numbering in all, six persons; one warehouse, from which, in 1855, produce to the value of $200 was shipped, the trade of that year being injured in consequence of drouth and low water. In 1854—which was a favorable year—the exports amounted to the value of about $1,500. To call this a town, in any sense, would be an obvious misapplication of the term."

Here the facts are essentially different. We have here a compact community of 42 houses, occupied by persons who may fairly be said to dwell together, and who are separated from a city of the second class only by the city's incorporation line, and who have all the conveniences which proximity to the city affords, and whose property is assessed for general taxation as additions to this city.

In the case of *First National Bank of Owatonna* v. *Wilson*, 62 Ark. 140, 34 S. W. 544, Mr. Justice RIDDICK, speaking for this court, said: "On the other hand, there may be towns that have overgrown their corporate limits, so that one may dwell within the town, and still be outside the corporate limits."

The map of the city of McGehee which we have before us shows such to be the case here. The city of McGehee has grown in various directions, and is now, and was at the time the assessments in question were made, a larger town than its corporate limits indicate. In other words, many persons are residents of the town of McGehee within the popular meaning of the word "town" who do not reside within the corporate limits thereof. See also *Spaulding* v. *Haley*, 101 Ark. 299, 142 S. W. 172; *Rogers* v. *Galloway Female College*, 64 Ark. 635, 44 S. W. 454, 39 L. R. A. 636; *Clements* v. *Crawford County Bank*, 64 Ark. 7, 40 S. W. 132, 62 Am. St. Rep. 149.

We conclude therefore that the lots in each of the four additions to McGehee are within that town within the meaning of the act of 1923, or, in any event, that these additions themselves constituted a town, the people thereof dwelling together as residents of a community called McGehee, and therefore residents of a town within the meaning of the act of 1923.

The decree of the court below is therefore reversed, and the cause will be remanded with directions to enter a decree in conformity with this opinion. It is so ordered.