**In re Patrick KELLEY, Debtor.**

**No. 2:10–bk–17145M.**

United States Bankruptcy Court,
E.D. Arkansas,
Helena Division.

Aug. 16, 2011.

Donald E. Knapp, Jr., Knapp Law Firm, Helena, AR, for Debtor.

## ORDER

JAMES G. MIXON, Bankruptcy Judge.

On September 30, 2010, Patrick Kelley (Debtor) filed a voluntary petition for relief under the provisions of Chapter 7 of the United States Bankruptcy Code. James C. Luker was appointed the Chapter 7 Trustee. The Debtor claims on his amended schedules filed March 8, 2011, that his residence located at 2179 Highway 242 West, Lexa, Arkansas, is exempt pursuant to the Arkansas Constitution, Article 9, Section 4, in the sum of $350,000.00. He claims exempt personal property consisting of a 1999 GMC van, cash in the sum of $200.00, and tools and equipment valued at $750.00. The claim of exemption for the truck, tools and equipment are made pursuant to Arkansas Code Annotated § 16–66–218(a)(2) & (4) and the cash of $200.00

pursuant to Arkansas Constitution, Article 9, Section 1.

On May 2, 2011, the Trustee filed an objection to the Debtor's claim of homestead exemption on the grounds that the property is urban in nature and is limited in size to 1/4 an acre pursuant to Article 9, Section 5 of the Arkansas Constitution. The Trustee also objects to the homestead exemption because the Debtor caused a deed of trust in the sum of $353,000.00 to issue from him to his mother and father which was filed 30 days before the petition was filed and that said deed of trust represents a voluntary transfer avoidable by the Trustee and recoverable for the benefit of the estate pursuant to 11 U.S.C. § 550 and § 551 and other unspecified sections of the Bankruptcy Code. The Trustee objects to the exemption for tools and equipment because they are not described with sufficient particularity. The Debtor denies all of the Trustee's allegations and claims the deed of trust was for a legitimate pre-existing debt.

Trial on the merits was held in Helena, Arkansas, on June 7, 2011, and the matter was taken under advisement. Both parties have filed briefs and the Court, at the invitation of both parties, viewed the property. The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and the Court has jurisdiction to enter a final judgment in this case.

I.

PERSONAL PROPERTY

■ The Debtor claims on Schedule C an exemption in a 1999 GMC Van, tools and equipment pursuant to Arkansas Code Annotated § 16–66–218(a)(2) & (4).[1] The

Debtor's claim of exemptions in personal property pursuant to state law is limited to the following property:

The personal property of any resident of this State, who is not married ... in specific articles to be selected by such resident, not exceeding in value the sum of two hundred dollars, in addition to his and her wearing apparel, shall be exempt from seizure on attachment, or sale on execution or other process from any court, issued for the collection of any debt by contract....

Article 9, Section 1, Arkansas Constitution (1874).

Because Arkansas Code Annotated § 16–66–218(a)(2) and (4) provides for exemptions in excess of the amount set by the Arkansas Constitution, the statutory exemptions are unconstitutional and disallowed.[2] See *Fed. Sav. & Loan Ins. Corp. v. Holt (In re Holt)*, 894 F.2d 1005 (8th Cir.1990); *In re Hudspeth*, 92 B.R. 827 (Bankr.W.D.Ark.1988); *In re Giller*, 127 B.R. 215 (Bankr.W.D.Ark.1990); *In re Williams*, 93 B.R. 181 (Bankr.E.D.Ark. 1988). Therefore, the Debtor having already claimed his $200.00 in cash is not allowed a claim of exemption in any other personal property except his personal clothing.

II.

REAL PROPERTY

The Debtor claims his residence and approximately eight acres located at 2179 Highway 242 West, Lexa, Arkansas, as an exempt rural homestead pursuant to Article 9, Section 4 of the Arkansas Constitution. The Debtor purchased the property in 1995 or 1996 with money loaned by

---

1. The Debtor is not married now and was not married on the date the petition was filed.

2. The Debtor made the decision to claim state exemptions rather than federal as provided by Arkansas Code Annotated § 16–66–217 (2005 Supp.) and 11 U.S.C. § 522(b)(3)(A).

Merchants & Farmers Bank. He has paid the loan in full. (Tr. at 62 & 84.) He was not married when he purchased the home but then he married in 1999 and he was divorced in 2009. During the marriage he lived in the residence with his wife. (Tr. at 85.)

Highway 242 West is also known as North Fourth Street Road as it leaves Plaza Street in downtown West Helena and travels north about two miles to the location of the Debtor's residence. (Tr. at 13 & 108.) The Debtor's property corners with the city limit of the town of Helena–West Helena on the southeast side. (Def.'s Ex. 3 & Tr. at 95.) The Debtor acknowledged he is about a five minute drive from all of the urban amenities Helena–West Helena has to offer (gas stations, Wal–Mart, liquor store, bank, pawn shop, etc.). (Tr. at 108.)

The nearest gas station is at Fourth and Quarrels Lane at a convenience store about a mile a one-half south toward Plaza Street. There is beer joint nearby that sells beer, (fish) bait, and groceries. (Tr. at 107.) There is a church near the residence. (Tr. at 107.) There is a private school south of the Debtor's property less than a mile away. There is no public school nearby, but the residence is in the Helena–West Helena school district. (Tr. at 15 & 107.) The streets and roads in the area are all paved by the state or the city. (Tr. at 14.) No public sidewalk exists and the Debtor's postal address is Lexa, Arkansas, not Helena–West Helena, Arkansas. The residence has fire protection from the city of Helena–West Helena because it is within five miles of the city and there is a fire hydrant located near the house. (Tr. at 104.) The property is served by the city of Helena–West Helena water and garbage pick up. (Tr. at 103–104). Electric services are provided by Entergy, not a rural co-op. The Debtor

has telephone service. (Tr. at 104.) The Debtor's property does not have city sewer service and is on a septic tank. (Tr. at 87.) The sheriff serves the property rather than the city police because it is in the county. (Tr. at 50 & 66–67.)

Thomas Larry Delk, an employee of Helena National Bank who lives 6/10ths of a mile west of the Debtor's residence and passes by the residence every day, described the area as, "it's residential all the way from, you know, West Helena, Plaza Street, all the way out there, but I know a good mile or so past there it's all houses, you know." (Tr. at 14.) Most of the houses in the immediate area are located on tracts larger than one acre and are all facing the highway. (Tr. at 14 & 81.)

The Trustee described the area as follows, "when you leave Highway 1 and come through Lexa, there's a long straight stretch that there are quite a number of homes, but there is considerable agricultural activity along the way, as well. And then, when you get within about a half a mile of the end of Fourth Street, then for the next half mile it's built up, one home after another on both sides of the road, with nice homes. And as you turn that curve and come south into West Helena, immediately as you come around that curve, Mr. Kelley's home is on the right, which is the west side of the road as you are coming this way. And on both sides of the road, from that point on, all the way into town, it's pretty well solidly built up. There may be one or two spots where there will be a vacant area along the highway." (Tr. at 39.)

The shape of the city boundaries along north Fourth Street Road is partially in the shape of a strip to include only the houses on either side of the road until the city boundary reaches the east boundary of the Debtor's land. (Tr. at 60 & Def.'s Ex. 2 & 3.) Immediately behind the Debt-

or's property (to the west) is an active pecan orchard consisting of 80 or 90 acres. (Tr. at 68.) Across the highway (to the east) is the national forest. (Tr. at 68.) To the south of the Debtor's property, toward the town of Helena–West Helena is Jerry Robertson's personal residence which consists of 16 acres of land. (Tr. at 68.) Originally Robertson bought 27 acres that was used to raise vegetables for retail and "truck patching." (Tr. at 63.) Robertson testified that he sold the eight acres of his 27 acres to the Debtor in 1995 for $200,000.00. (Tr. at 62 & 71.) The city limit line is actually on Robertson's property. (Tr. at 65.) Robertson testifies he now owns 16 acres of the 27–acre block and he uses eight acres of the 16 as a horse pasture. (Tr. at 64.) Adjacent and south of Robertson's 16 acres, he owns a 10–acre plot that contains salvage vehicles. (Tr. at 66.) Directly north of the Debtor, is a 114–acre tract of farmland owned by Katherine Nobles. (Tr. at 86.) Across Highway 242 which runs in front of the Debtor's property and slightly northeast is three acres of woods also owned by Nobles which is adjacent to the forest. (Tr. at 87.)

Andrew Valley, the former city attorney for the city of Helena–West Helena identified the city boundaries of the city of Helena–West Helena when the two cities were consolidated. (Tr. at 47 & Def. Ex. 2 and 3.) According to the last census, the population has declined from 15,000 residents to 12,000 residents. (Tr. at 53.) Valley stated that the residence was 1/10th to 2/10ths of a mile north of the city limits and is not part of the municipality of Helena–West Helena. (Tr. at 48.) He stated that the Debtor's eight acres cornered on the city limits and based on his experience of 12 years as the city attorney, he does not consider the Debtor's property part of the municipality of Helena–West Helena.

(Tr. at 51.) He explained, "Fourth Street all the way toward Lexa you have houses bordering on each side of the road. Beyond the residence you have on the right side of the road, you have rural land on both sides behind that, that would not be in the city limits." (Tr. at 60.)

The Debtor's house sits on the rear of the eight acres and behind the residence is a barn and a swimming pool. (Tr. at 13 & 38.) The property has a white fence on the front of the property next to the highway. According to Delk, the Debtor has some farm animals on his property such as horses, mules, and a longhorn cow or two. (Tr. at 27–28.) However, the Trustee states that animals that have been kept on the property are not connected with agricultural purposes. (Tr. at 38–39.) There is no row crop activity on the property. (Tr. at 18.) The residence is taxed by the county as rural property. (Tr. at 19 & Def.'s Ex. 1.)

The Debtor valued the property at $350,000.00 and indicated a secured claim of $332,000.00 on the original schedules which have since been amended.[3] (Tr. at 30 & Pl.'s Ex. 1.) The property is encumbered by a deed of trust given to the Debtor's mother and father. (Tr. at 34–35 & Pl.'s Ex. 4.) The deed of trust was recorded August 31, 2010, approximately 30 days before the bankruptcy petition was filed on September 30, 2010. The deed of trust states that it is to secure an indebtedness of $353,000.00. The Trustee testified that the Debtor stated at the first meeting of creditors that no new money changed hands when the deed of trust was executed, but that the deed of trust was to secure money the Debtor's father had loaned him over the years. The Debtor explained that his father felt like he need-

---

**3.** Schedule D of the Debtor's amended peti-       tion states the debt to be $355,000.00.

ed to have some collateral in case something happened to the Debtor. (Tr. at 36.)

## III.

## DISCUSSION

Section 522(b) of the Bankruptcy Code allows a debtor to claim exemptions pursuant to state law applicable on the date the petition is filed. Arkansas Code Annotated § 16–66–217 allows residents of the State of Arkansas to claim exemptions under 11 U.S.C. § 522 of the Bankruptcy Code or the exemptions provided by the constitution and the laws of the State of Arkansas.[4] Article 9, Section 4 of the Arkansas Constitution provides:

> The homestead outside any city, town or village, owned and occupied as a residence, shall consist of not exceeding one hundred and sixty acres of land, with the improvements thereon, to be selected by the owner; Provided, The same shall not exceed in value the sum of twenty-five hundred dollars, and in no event shall the homestead be reduced to less than eighty acres, without regard to value.

Article 9, Section 5 of the Arkansas Constitution provides:

> The homestead in any city, town or village owned and occupied as a residence, shall consist of not exceeding one acre of land, with the improvements thereon, to be selected by the owner; provided, the same shall not exceed in value the sum of two thousand five hundred dollars, and in no event shall such homestead shall be reduced to less than one–quarter of an acre of land, without regard to value.

The objecting party has the burden of proving that exemptions are not properly claimed. Fed. R. Bankr.P. 4003(c); *In re Jones*, 193 B.R. 503, 506 (Bankr.E.D.Ark.1995). The Arkansas Supreme Court has stated that it is settled policy that homestead laws are remedial and shall be liberally construed to effectuate the benefit purpose for which they are intended. *In re Evans*, 190 B.R. 1015, 1019 (Bankr.E.D.Ark.1995)(quoting *Smith v. Flash T.V. Sales and Service, Inc.*, 17 Ark.App. 185, 190, 706 S.W.2d 184, 187 (1986); *Franklin Fire Ins. Co. v. Butts*, 184 Ark. 263, 270, 42 S.W.2d 559, 562–63 (1931)). All presumptions are to be made in favor of the preservation and retention of the homestead. *In re Jones*, 193 B.R. 503, 506 (Bankr.E.D.Ark.1995).

Courts considering this issue of whether a homestead is rural or urban have focused on the property in question and the surrounding area in determining whether the homestead should be considered rural or urban. *In re Evans*, 190 B.R. 1015, 1022 (Bankr.E.D.Ark.1995). Ultimately, whether the property is rural or urban is to be determined by the facts of each case. *King v. Sweatt*, 115 F.Supp. 215, 220 (W.D.Ark.1953); *Farmers Co-op. Ass'n. v. Stevens*, 260 Ark. 735, 736–37, 543 S.W.2d 920, 921 (1976).

There is no precise legal definition for the terms "city, town or village" as used in the Arkansas Constitution with regards to the homestead exemption. The Arkansas Supreme Court presumes that the words were used in their popular sense. *Farmers Co-op. Ass'n. v. Stevens*, 260 Ark. 735, 738–39, 543 S.W.2d 920, 922–23 (1976). District Judge John Miller stated in the

---

4. The Debtor qualifies for a homestead exemption even though he was divorced at the time of filing the petition because he and his ex-wife had lived in the house together. *Scott County Bank v. McCraw (In re McCraw)*, 58 B.R. 175, 176 (Bankr.W.D.Ark.1985); *Middleton v. Lockhart*, 344 Ark. 572, 580, 43 S.W.3d 113, 119 (2001)(citing *Jones v. Thompson*, 204 Ark. 1085, 166 S.W.2d 1036 (1942)).

often cited case of *Bank of Sun Prairie v. Hovig*, "[a] city is a town and a village is a town and ordinarily the word city or village indicates the size of the town. Therefore, the word town seems to be the key word in the Constitutional provision under consideration." 218 F.Supp. 769, 784 (W.D.Ark.1963).

■ The Arkansas Supreme Court discussed the popular meaning of the word town when it stated:

Generally, in speaking of a town as a mere place of geographical location, we have no reference whatsoever to the corporate limits, but simply use the name of the town as designating the aggregate body of people living in such considerable collection of dwelling houses, and in such proximity as to constitute a town, as distinguished from the country.

*Rogers v. Galloway Female College,* 64 Ark. 627, 635, 44 S.W. 454, 456 (1898). Accordingly, the fact that the property in question falls inside or outside the city limits is not dispositive. *King v. Sweatt,* 115 F.Supp. 215, 219–220 (W.D.Ark.1953); *First Nat'l Bank v. Wilson,* 62 Ark. 140, 143, 34 S.W. 544 (1896).

The rural/urban issue has been addressed by this Court before. See *In re Oldner,* 191 B.R. 146, 150 (Bankr.E.D.Ark.1995)(holding property outside the city limits was urban because close proximity to city conveniences); *In re Evans,* 190 B.R. 1015, 1023 (Bankr. E.D.Ark.1995) (property outside city limits was urban because the debtors' property enjoyed the same modern conveniences as those that lived in town and the surrounding area contained many businesses, which is characteristic of an urban area), aff'd, 108 F.3d 1381 (8th Cir.1997); *In re Weaver,* 128 B.R. 224, 228 (Bankr.W.D.Ark. 1991) (residence located in plated subdivision that was not provided services commonly though of as being provided to an urban community was rural in nature); *In re Chambers,* 2003 WL 21397757 (Bankr. W.D.Ark.2003) (residence that has immediate access to all of the conveniences of an urban area is determined to be urban even though just outside city limits).

IV.

## ANALYSIS

■ The property in question has characteristics of both an urban and rural homestead. Factors suggesting urban include the property's proximity to the town of Helena–West Helena; the availability of all urban amenities of Helena–West Helena; the Debtor's property corners on the city limits of Helena–West Helena; the residence is provided some city services such as water, fire protection, garbage pickup; the property has telephone service and the electric service is provided by Entergy and not a rural co-op; the property is located on a paved road (North Fourth Street Road and State Highway 242 West); the property is not devoted to agricultural use; and the surrounding area consists of houses on either side of the highway beginning north of the Debtor's property south toward Plaza Street.

Factors which suggest rural include the size of the Debtor's yard; its location outside the city limits of Helena–West Helena; the fact that in the near vicinity of the Debtor's property the city limits form a strip along the highway and the houses are usually on a large tract fronting the highway while the use to the west behind the houses is devoted to agricultural uses; the land to the east in front of the Debtor's property is not conducive to agricultural uses because it is within a ridge area; the Debtor has some animals and a barn located on the property; the property is not served by city sewer; the post office serving the residences is located in Lexa, Ar-

kansas, a tiny community four miles west and north of the subject property; along Fourth Street Road traveling east toward Plaza Street there are a number of vacant parcels; the population of Helena–West Helena declined from 15,000 residents to 12,000 residents in 2010; the property is taxed as rural property; and law enforcement is provided by the county sheriff's office and not city police.

After considering the factors listed above and the impression gained from a view of the residence and surrounding areas, the evidence is evenly balanced with no preponderance in favor of either party. Therefore, the Trustee's objection must be overruled because he is the party who carries the burden of proof and with the evidence evenly persuasive he has not sustained his burden of proof. See *In re Mendenhall,* 54 B.R. 44 (Bank.W.D.Ark. 1985). The objection to the Debtor's homestead as being urban is overruled and the homestead is determined to be rural.

## V.

### 11 U.S.C. § 522(g)

■ The Trustee also objects to the Debtor's claim of homestead pursuant to the provisions of 11 U.S.C. § 522(g) which provides as follows:

> Notwithstanding Section 550 or 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551 or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—
>
> 1. (A) such transfer was not a voluntary transfer of such property by the debtor; and

> (B) the debtor did not conceal such property; or
>
> 2. the debtor could avoided such transfer under subsection (f)(1)(B) of this section.

See also 4 Collier on Bankr.¶ 522.08[2] & [3].

The Trustee cites several cases which hold that the Debtor's claim of exemption may be disallowed under 11 U.S.C. § 522(g) even though the Trustee has not brought an adversary proceeding and recovered the property or lien transferred. See *In re Kuhnel,* 495 F.3d 1177, 1181 (10th Cir.2007); *Glass v. Hitt (In re Glass),* 60 F.3d 565, 568–69 (9th Cir.1995); *In re Hicks,* 342 B.R. 596, 599–601 (Bankr. W.D.Mo.2006); *In re Ulrich,* 203 B.R. 691, 693 (Bankr.C.D.Ill.1997); *In re Trevino,* 96 B.R. 608, 612 (Bankr.E.D.N.C.1989).

However, the facts in this case are distinguishable from the cases cited above in two important ways. First, although the issue was raised in the Trustee's pleading objecting to the homestead, the pleading never alleged what avoiding power the Trustee was asserting. Second, other than proving that the deed of trust was recorded which encumbered the Debtor's homestead thirty days prior to the bankruptcy filing, no proof of any of the other elements of 11 U.S.C. § 547 (preference), 11 U.S.C. § 548 (fraudulent conveyance) or 11 U.S.C. § 544 (strong arm power) were offered. The Debtor claims the deed of trust secured a valid pre-petition debt but no proof was offered other than the Debtor's testimony.

Federal Rule of Bankruptcy Procedure 7001(1) requires the initiation of an adversary proceeding to recover money or property. As of this date, the Trustee has not recovered any property in which the Debtor claims as exempt.[5] The Trustee never

---

5. The granting of a lien, under bankruptcy law, is a transfer which may be recovered by

specifically mentioned 11 U.S.C. § 522(g) in his objection to the Debtor's exemptions. The Trustee's objection cannot be said to have fairly alerted Debtor or Debtor's counsel that they had to defend an unspecified avoiding power action by the Trustee on the day the hearing was held on the Trustee's objection to exemptions. Therefore, this issue will remain under advisement. The Trustee has 30 days to commence an adversary proceeding to set aside the deed of trust. If the Trustee is successful then the Court will consider the issue under 11 U.S.C. § 522(g) as to the claim of exemptions.

IT IS SO ORDERED.

the Trustee. See *In re Hicks,* 342 B.R. 596, 599 (Bankr.W.D.Mo.2001); *In re Scott,* 2000 WL 122360 (Bankr.N.D.Iowa 2000).