# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: AUGUST 16, 2018
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL
DATE 9/6/18 *Kim Redmon, DC*

2017-SC-000473-MR

TRACELL NUNN                                            APPELLANT

V.              ON APPEAL FROM MCCRACKEN CIRCUIT COURT
               HONORABLE TIMOTHY JON KALTENBACH, JUDGE
                      NO. 16-CR-00177-002

COMMONWEALTH OF KENTUCKY                           APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Appellant, Tracell Daqune Nunn, appeals from a judgment of the McCracken Circuit Court convicting him of the wanton murder of Gary Johnson, the attempted murder of Denzel Powell, and of being a first-degree persistent felony offender. Appellant was sentenced to a total of twenty years in prison.

Appellant contends that he did not receive a fair trial because the trial court erroneously admitted: (1) evidence of an uncharged robbery and assault Appellant allegedly committed minutes before the shootings that resulted in his present convictions; and (2) evidence which suggested that defense counsel leaked a police investigative report to intimidate a witness.

For the reasons stated below, we affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Commonwealth's evidence charged that in April 2016 Appellant and his companion, Chris Smith, exchanged gunfire with Denzell Powell outside of a bar in Paducah.  Appellant and Smith were charged with the attempted murder of Powell, based upon evidence that they initiated the gunfire.  However, one of Powell's bullets struck and killed a bystander named Gary Johnson.  Consequently, Appellant, Smith, and Powell were each charged with the wanton murder in connection with Johnson's death.  The three defendants were tried separately.  Powell accepted a plea offer and pled guilty to second degree manslaughter, for which he received a ten-year sentence.

Shortly after the shooting, Powell's cousin, Shandra Starks, told police that she witnessed the incident.  She said that she saw Chris Smith and another man approach Powell's vehicle and begin firing guns at it.  She said she was certain that the man who started shooting was the same person she had seen, just minutes before, pistol-whipping a person named Emmitt and robbing him of a controlled substance.  Starks identified that man as Appellant.  Later, but before Appellant's trial, Starks commented on Facebook that she was loyal to Powell and that she did not actually witness the robbery first-hand.

Prior to the trial, Appellant's counsel moved to exclude from evidence any mention of Starks' allegation about the assault and the robbery of Emmitt.  The trial court denied the motion.  At trial, Appellant reiterated his motion to exclude the anticipated testimony without success.

2

When called to testify, however, Starks disavowed her statement to the police. She denied seeing Appellant attack Powell. Starks also testified that within days after the shooting, she became concerned for her safety after learning that a police report circulating on the streets identified her as a witness to the shooting. She apparently received other threats against herself and her family, and she was so frightened that she considered leaving the state.

Because of the inconsistency between Starks' trial testimony and her earlier statements to police, the Commonwealth was permitted to have Starks read into the trial record the transcript of her initial statement. Appellant again objected, arguing that Starks' accusation of an uncharged criminal act was inadmissible under KRE 404(b). He emphasized that no witnesses corroborated Starks' account; that no one knew who Emmitt was; that her testimony was unreliable because of her Facebook admissions; that the evidence was not relevant to the charged crimes, was unduly prejudicial under KRE 403 and, therefore, should have been excluded.

Based upon Starks' testimony of her concern for her safety, after learning that the police report was circulating on the streets, the prosecutor sought to insinuate that defense counsel had purposefully leaked the contents of the

3

police report to intimidate the Commonwealth's witnesses, an accusation which defense counsel strenuously denied.[1]

## II. THE EVIDENCE THAT APPELLANT HAD BEATEN AND ROBBED A MAN JUST BEFORE THE SHOOTING THAT CAUSED JOHNSON'S DEATH WAS IMPROPERLY ADMITTED.

On appeal, Appellant first contends that the introduction of Starks' statement accusing Appellant of committing crimes against Emmitt violated KRE 404(b), lacked probative value, and was irrelevant to the crimes charged. The Commonwealth argued that the evidence fit within the KRE 404(b)(2) exception, which permits a party to introduce evidence of other wrongful acts if they are "so inextricably intertwined with other evidence essential to the case that separation of the two could not be accomplished without serious adverse effect on the offering party." KRE 404(b)(2).

KRE 404(b) provides as follows:

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:

(1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or

(2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.

---

[1] There is no evidence to suggest that Appellant's trial counsel ever acted unethically in connection with the handling of this police report or any other discovery documents.

4

The trial court agreed with the Commonwealth that Starks' reference to the assault upon Emmitt was inextricably intertwined with the attack on Powell because Starks' identification of Appellant as a participant in the shoot-out was based upon her claim that she had just seen him commit crimes against Emmitt. Consequently, the trial court admitted the evidence under the KRE 404(b)(2) exception.

The general rule established by KRE 404(b) is "exclusionary in nature," and "exceptions to the general rule that evidence of prior bad acts is inadmissible should be closely watched and strictly enforced because of [its] dangerous quality and prejudicial consequences." *O'Bryan v. Commonwealth*, 634 S.W.2d 153, 156 (Ky. 1982). To determine the admissibility of prior bad acts we use a three-prong test described in *Bell v. Commonwealth*, 875 S.W.2d 882, 889–891 (Ky. 1994). The proffered evidence is evaluated in terms of: 1) its relevance; 2) its probative value; and 3) its prejudicial effect. We review the trial court's application of KRE 404(b) for an abuse of discretion. *Driver v. Commonwealth*, 361 S.W.3d 877, 883 (Ky. 2012); *Anderson v. Commonwealth*, 231 S.W.3d 117, 119 (Ky. 2007).

As the trial court concluded, the temporal proximity of the assault of Emmitt and the shooting of Powell accounts for Appellant's presence at the scene with a gun. It adds probative weight to Starks' identification of Appellant as Powell's assailant. Starks was able to identify Appellant as Johnson's murderer, at least in part, because she had just seen him attack

Emmitt with a gun. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401. Stark's account of Appellant's confrontation with Emmitt, including his possession of a handgun minutes before the shooting, was relevant to prove his involvement in Johnson's death.

However, to be "inextricably intertwined" under KRE 404(2)(b), the facts surrounding the prior event must be "so interwoven with evidence of the crime charged that its introduction is unavoidable." *Funk v. Commonwealth*, 842 S.W.2d 476, 480 (Ky. 1992) (quoting Robert G. Lawson, *The Kentucky Evidence Law Handbook*, § 2.20, 37 (2d ed. 1984)).[2] See also *Fleming v. Commonwealth*, 284 Ky. 209, 144 S.W.2d 220, 221 (1940) (Evidence is inextricably intertwined where "two or more crimes are so linked together in point of time or circumstances that one cannot be fully shown without proving the other."). *Ernst v. Commonwealth*, 160 S.W.3d 744, 761–62 (Ky. 2005). The alleged incident involving Emmitt fails that test. Although the two incidents, the attack on Emmitt and the shootout with Powell occurred very close in time, the earlier incident had concluded before the latter began with no temporal or spatial overlap. The entire shooting incident involving Powell and Johnson can be fully shown without any intersection with the earlier incident. The details of

---

[2] Also see Robert G. Lawson, *Kentucky Evidence Law Handbook* § 2.30[3], 417 (5th ed. 2013).

the events involving Emmitt were not inextricably intertwined with the events involving the wanton murder of Johnson.

We are also persuaded that details of the alleged assault on Emmitt fails the *Bell* test because its probative value is substantially outweighed by the prejudice associated with this unnecessary level of detail. KRE 403. The particulars of that event, the pistol-whipping and strong-arm theft of drugs, add nothing to the issues being tried. A general reference to Appellant's confrontation with Emmitt would sufficiently inform the jury why Starks' attention was drawn to him. There is great probative value in the fact that the confrontation with Emmitt occurred at the same location shortly before the murder, thereby placing Appellant at the scene and establishing the reliability of Stark's identification. But the additional details of Appellant's violent behavior, pistol-whipping Emmitt and stealing his drugs, lend little probative value to the issues relevant to the murder of Johnson and the attempted murder of Powell, and serve only to portray Appellant as a violent criminal of the type likely to engage in a gun attack that occurred here. We accordingly conclude that the specific details of the pistol-whipping and the theft were not admissible.

### III. THERE WAS NO IMPLICATION THAT APPELLANT OR HIS LAWYER LEAKED THE POLICE REPORT.

Appellant next complains that the Commonwealth unfairly prejudiced his case with the implication that he or his attorney had leaked the police report identifying Starks as a witness to the crime for the purpose of intimidating

7

potential witnesses in the case. Starks testified at trial that she had been threatened, that Appellant's brother had started a fight with her son, and that she was afraid to testify at Appellant's trial. Detective Travis Watson testified that when he served Starks with her trial subpoena she appeared to be upset and fearful and reluctant to accept service. The Commonwealth also described other witnesses as being afraid to testify against Appellant.

Starks admitted that she was fearful because documents describing her post-murder statement to police had been leaked to the public, and it was for this reason that she was facing threats relating to her participation as a witness in the case. The prosecutor asked her if the people who threatened her showed her a police report naming her as a witness against Appellant, thus implying a link between the threats and the disclosure of the police report. Starks responded, "no [the people threatening her did not show her a police report]," she had seen "motions of discovery reading everything I said, like how Detective Young made it sound like I came to the police station, you know to give information about [Appellant] and Chris [Smith] when I didn't."

Appellant cites us to the following trial testimony of Detective Nathan Smith in support of his claim that the Commonwealth accused defense counsel:

> **Prosecutor**: One thing Ms. Starks testified is that she had been confronted by people that had a copy of your investigative report out on the street. Now I want to ask you something about that report. Is that report a public record?
> **Smith**: No.

8

**Prosecutor**: When you investigate cases as a detective and create a report, if someone gets charged, who gets ahold of that report?

**Defense Counsel**: Judge. May we approach?

**[Bench conference]**

**Defense Counsel**: This is a little odd, but it seems like he's smearing the defense, like we disseminated information about, uh, the case, so people can be intimidated.

**Prosecutor**: I think that's true. I don't know that you did, but I think it's come through your client. . ..

**Defense Counsel**: Wow.

**Prosecutor**: Because people on the street, we've had testimony that people on the street, Shandra Starks said people on the street confronted her with the investigative report. They got it somewhere, they either got it from the Commonwealth or the defense.

**Trial Court**: And the relevance is that?

**Prosecutor**: The report is being used to intimidate witnesses. Cause no one would know Shandra Starks was a witness unless they got the report.

**Trial Court**: Your objection?

**Defense Counsel**: Judge, the report is the report. How could the report be used to intimidate witnesses? That's what the report is.

**Trial Court**: I'll overrule.

**[End of bench conference]**

Detective Smith's testimony resumed with his statement that the police report was not a public record. As the foregoing shows, Appellant objected to the line of questioning about Starks' fear induced by the public disclosure of the police report identifying her role as an eye witness. The trial court overruled the objection. Then, on cross-examination, defense counsel asked

9

Detective Smith if any evidence indicated that either the prosecution or the defense had disseminated the report to the public:

> **Det. Smith**: Well the only way anyone else other than you or the Commonwealth can get a copy is if it is disseminated. So, it has to come from somewhere. I don't see the Commonwealth giving out copies to other people.
>
> **Defense Counsel**: But you see that, that the defense side was, is that what you're saying.
>
> **Det. Smith**: It's happened before.
>
> **Defense Counsel**: But you don't have any evidence of this?
>
> **Smith**: No.

On appeal, Appellant contends that "[t]he trial court abused its discretion when it allowed the prosecution to imply defense counsel had leaked the name of witnesses." Keeping the issue in context, the issue being addressed was Starks' inconsistent statements and the credibility of her testimony that she did not witness the shooting. Evidence of the threats and the fact that those originated with the disclosure of Starks' name in the police report was certainly relevant to the issue because it explains *why* she would say one thing in a police interview and another thing at trial. Obviously, the relevant inference sought by the Commonwealth was that Starks changed her story because she feared retaliation from Appellant if she testified consistent with her statement to police. That information fully satisfies the Commonwealth's need for evidence explaining why Starks changed her story and was reluctant to testify.

The Commonwealth contends that the prosecutor had a good-faith basis for introducing evidence about who had access to the police report and the

10

accompanying insinuation that Appellant released the report. But that evidence addresses only the issue of *how* that information became public knowledge, and it sheds no light on Starks' credibility; it has no relevance to that issue. The trial court should have sustained Appellant's objection at the bench conference transcribed above.

But having said that, the only thing adduced thereafter by the Commonwealth was the rather innocuous fact that the police report was not a public record. The implication that Appellant may have leaked the report is derived exclusively from the cross-examination of defense counsel, asking the police officer if there was any evidence that either the prosecution or the defense had disseminated the report to the public.

It appears that defense counsel successfully interrupted the Commonwealth's line of inquiry on the subject, only to reopen it upon cross-examination. The prosecutor never reached the point of insinuating that defense counsel or appellant leaked the information. That possible inference arose only after the questioning of defense counsel.

The jury heard testimony that Starks was threatened because her name was in the police report. There was no evidence offered to establish that Appellant or someone on his behalf released that information, and the only implication that a defendant in a criminal case might do so was Detective Smith's comment, "It's happened before," which was in direct response to Appellant's questioning. The fact that a witness was frightened by the disclosure of her name, and the fact that her family was threatened by a

11

person with no identified connection to Appellant does not give rise to an inference that Appellant arranged for the intimidation of the witness. More importantly, we are not convinced that such an inference was ever made. In any event, it might be inferred with equal plausibility that either of the two other defendants, Powell and Chris Smith, or their lawyers, leaked the report, because presumably they, too, had access to the same discovery information.

We are satisfied that Appellant was not prejudiced by an improper implication that he or someone on his behalf released the police report to intimidate a witness.

### IV. THE EVIDENTIARY ERROR WAS HARMLESS.

Having agreed that the trial court should have sustained Appellant's objection to the Commonwealth's foray into the issue of how the police report was leaked, and that the admission of evidence of the pistol-whipping and robbery of Emmitt violated KRE 404(b), we next consider the harmful effect those errors has on the trial. "A non-constitutional evidentiary error may be deemed harmless, . . . if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error." *St. Clair v. Commonwealth*, 455 S.W.3d 869, 898 (Ky. 2015) (quoting *Winstead v. Commonwealth*, 283 S.W.3d 678, 688–89 (Ky.2009)). The Commonwealth bears the burden of demonstrating that the error was harmless.

Evidence of Appellant's participation in the shooting was strong, if not compelling. Other witnesses besides Starks identified Appellant as a participant in the shooting attack on Powell. After the incident, Appellant fled,

12

thereby evincing a consciousness of guilt in relation to the killing of Johnson. *Smith v. Commonwealth*, 46 S.W.2d 513, 515 (Ky. 1932) (Evidence of flight "is admitted for the purpose of showing consciousness of guilt, and to establish a presumption of guilt."). We are satisfied with fair assurance that the judgment was not substantially swayed by evidentiary error.

In our harmless error review, we take note of the extraordinary situation that developed during the jury deliberations. At least one juror was sufficiently frightened that the jury foreperson asked if she could be excused and replaced. During its deliberations, the jury sent a message through the bailiff stating that a juror was fearful for her safety and the safety of her children because she had received "concerning" looks from people in the courtroom. The trial court responded by calling for additional security officers. The jury foreperson said that added security in the courtroom did not alleviate the fear of possible future retaliation against jurors. The trial court reminded the jury that making threats was a felony, and they should report any future threats to police.

We are not inclined to believe that any inadmissible evidence caused or contributed to this incident. That threats had been made against Starks and her family was properly admitted to explain her inconsistent statements, and therefore, the threats were a factor for the jury regardless of the issue of who released the police report. We can say with fair assurance that "the judgment was not substantially swayed" by evidentiary error. *Winstead*, 283 S.W.3d at 689.

13

The juror's fear for her safety as a result of participating in the case is, on its face, a grave matter, worthy of considerable attention. Appellant does not specifically raise that issue as grounds for relief, inasmuch as the only relief available at that point would seem to be a mistrial, if warranted after further examination of the juror's concerns. Appellant did not ask for a mistrial and does not argue for one on appeal. On the record before us, we decline to speculate whether that mode of relief would have been appropriate. *Jenkins v. Commonwealth*, 477 S.W.2d 795, 797–98 (Ky. 1972) (a party claiming entitlement to a mistrial must make a timely request for such relief).

## IV. CONCLUSION

For the foregoing reasons, the judgment of the McCracken Circuit Court is affirmed.

All sitting. Minton, C.J.; Hughes, VanMeter, Venters, and Wright, JJ., concur. Cunningham, and Keller, JJ., concur in result only.

COUNSEL FOR APPELLANT:

Erin Hoffman Yang
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

James Coleman Shackelford
Assistant Attorney General